UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN M. CAZA,

                                                        Plaintiff,

v.                                                         8:11-CV-613
                                                                            (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                        Defendant.
_____

KAREN M. CAZA, Plaintiff pro se
JOHN M. KELLY, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.[1]

## I.    PROCEDURAL HISTORY

Plaintiff "protectively filed"[2] an application for disability insurance benefits on

---

[1] Although plaintiff was represented by counsel at the agency level, she is proceeding pro se in this action. Thus, the court ordered defendant to file a brief in the first instance and allowed plaintiff the opportunity to file a brief responding to defendant's arguments. (Dkt. No. 14). The court sent plaintiff a notice on February 8, 2012, reminding her that her brief was due on March 8, 2012, and that if she failed to file a timely response, the court would review the Commissioner's decision without plaintiff's input. (Notice dtd. Feb. 8, 2012). On March 12, 2012, counsel for the Commissioner sent the court a response that he received by email from plaintiff. (Dkt. No. 16). Although plaintiff did not send her response to the court herself, because she is pro se, the court will consider her arguments. (Dkt. No. 16-1).

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security

November 26, 2007, claiming disability resulting from back pain, beginning on December 29, 2006. (Administrative Transcript (T) 120). Plaintiff's application was denied initially, and plaintiff requested a hearing. (T. 45). Plaintiff appeared and testified before an Administrative Law Judge (ALJ) on September 9, 2009. (T. 17-35). On March 11, 2010, the ALJ denied plaintiff's claim for benefits. (T. 8-16). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 28, 2011. (T. 1-4).

## II.     APPLICABLE LAW

### A.     Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

---

Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date. Plaintiff's actual application in this case is dated December 4, 2007. (T. 77-78).

> substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence supported the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

4

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

The ALJ found that plaintiff had severe "lumbar spine impairments," and that she had not engaged in substantial gainful activity[3] from December 29, 2006, the date that she alleged she became disabled. (T. 10). On July 17, 2008 plaintiff underwent a "microdiscectomy" to treat a herniated disc at the L5-S-1 level, but the surgery was not successful, and plaintiff's treating primary care physician, Dr. James Hicks, diagnosed "failed back surgery syndrome." (T. 10). The ALJ found that even though the medical records contained a diagnosis of "depressive disorder," the impairment was not severe within the meaning of the regulations because it did not impose more than a minimal limitation on plaintiff's ability to work.[4] (T. 10-12).

---

[3] Although the ALJ recognized that plaintiff did work in 2007, the money that she made from her limited work activity did not meet the "regulatory threshold for substantial gainful activity." (T. 10).

[4] Plaintiff does not claim otherwise. In fact, plaintiff vehemently denies being "depressed." (Dkt. No. 16-1 at 1). During her testimony at the hearing, plaintiff stated that she had dyslexia. (T. 27). In his decision, the ALJ correctly noted that the medical record does not indicate any such diagnosis, and found that plaintiff's "alleged learning disorder(s) is not a medically determinable impairment." (T. 12). Neither condition has ever affected plaintiff's ability to work, so there is no dispute regarding these two "non-exertional" disorders.

5

At step three of the disability analysis, the ALJ found that plaintiff's back impairments did not meet the severity of Listing 1.04 based on the lack of objective evidence.[5] (T. 12). At step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform a full range of light work, with certain exceptions, but that she could not perform her past relevant work due to the lifting requirements. (T. 12-15). Finally, the ALJ found that, with an RFC of light work, and based on plaintiff's age, education, and prior work experience, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (T. 15). The ALJ used Rule 202.21 of the Medical-Vocational Guidelines,[6] as a framework, after finding that any additional limitations plaintiff had would have "little or no effect on the occupational base of unskilled light work." (T. 15).

## IV.    PLAINTIFF'S CONTENTIONS

Although the defendant filed his brief first at the court's request, plaintiff has submitted an "email" in support of reversing the ALJ's decision. (Dkt. No. 16-1). Plaintiff argues that there were "mistakes" in her original application, and she meant to allege a disability onset of July 2007. She also asserts that she is now able to go back to work and is seeking a closed period of disability from July 2007 until July 2011, when she alleges she regained the ability to perform substantial gainful activity.

---

[5] Plaintiff does not argue that her impairment meets the severity of a listed impairment.

[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.21.

(Dkt. No. 16-1). After reading plaintiff's email, the court has interpreted her statements as arguing that the ALJ's determination that she could perform light work and his finding that plaintiff's allegations of disabling pain were not entirely credible were not supported by substantial evidence. I will also discuss plaintiff's claim that the court should simply grant her a closed period of disability, running from her newly asserted date of onset of July 2007 until July 2011, the month she states she regained her ability to work.

## V.    FACTS

Defense counsel in this case has reviewed the facts extensively in his brief, and the court adopts these facts, together with the facts as stated in the ALJ's decision, with any exceptions noted in the following discussion.

## VII.    RFC and Credibility

### A.    Legal Standards

#### 1.    RFC

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply

make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). When the weight lifted is "very little," a job is still in the light work category when it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The regulations also state that in order for an individual to be considered capable of performing a "full or wide range" of light work, she must "have the ability to do substantially all of these activities." *Id.* Finally, if the individual can perform light work, there is a presumption that he or she can do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

### 2. Pain/Subjective Complaints (Credibility)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the

credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### 3.    Application

In this case, the ALJ found that plaintiff could perform light work from December 29, 2006 until the date of his decision on March 11, 2010. Plaintiff now claims that her disability did not begin until July of 2007, and that beginning July 2011, she has recovered her ability to work.[7]  Thus, she claims that she should be entitled to a closed period of disability. Regardless of plaintiff's current condition or her condition after the Appeal's Council decision in March of 2011,[8] the court must

---

[7] There are no medical records supporting plaintiff's statements, and plaintiff is not requesting the court to consider "new and material" evidence as contemplated in the statute. *See Milano v. Apfel*, 98 F. Supp. 2d 209, 214 (D. Conn. 2000) (citing 42 U.S.C. § 405(g) (providing that a court may order that additional evidence be taken *before the [Commissioner]* if there is good cause for the failure to incorporate such evidence in the record in a prior proceeding). Plaintiff in this case is simply arguing that the Commissioner's decision is incorrect, and that she regained the ability to work after the Commissioner's decision was final.

[8] The ALJ's decision was March 11, 2010, however, the Appeals Council's decision is dated March 28, 2011, a little more than one year after the ALJ. (T. 4, 16).

still determine whether the ALJ's determination was supported by substantial evidence.[9]

In making the determination that plaintiff had the RFC to perform light work, the ALJ relied upon the RFC determination by consultative physician, Dr. David Welch, dated February 3, 2010. (T. 14-15, 391-98). The ALJ commented that he and plaintiff's counsel had attempted to obtain an RFC evaluation from a treating physician, but had been unable to do so. (T. 14). A review of Dr. Welch's consultative report shows that his *physical* findings are similar to the *physical* findings contained in plaintiff's treating physicians' reports. Dr. Welch found that plaintiff stood and walked "easily," had no difficulty walking on her toes, and bent over "easily" to touch her toes. (T. 391). She tolerated at **least 15 degrees** of back extension. (T. 391-92). Plaintiff's range of motion in both upper and lower extremities was "normal both actively and passively." (T. 392). There was no localized weakness, and her strength was "consistently 4/5." (*Id.*) Her coordination was good through all four extremities, and although there was some mild numbness in her feet, there was no real sensory deficit. (T. 392).

---

[9] As stated above, the scope of review of the Commissioner's final decision is limited to whether it is supported by substantial evidence in the record and whether the ALJ used correct legal principles. 42 U.S.C. § 405(g); *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (citations omitted). Although the court undertakes a full review of the Commissioner's decision, it is not the court's function to make fact findings or determine de novo whether the plaintiff is or was disabled from evidence that was not before the agency. *See Petrie v. Astrue*, 412 F. App'x 401, 403 (2d Cir. 2011) (citing *inter alia Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

Dr. Welch concluded that "this is a young lady who has absolutely no evidence of neurologic deficits other than some self-reported numbness in the bottoms of her feet . . . ." (*Id.*)  There was "no evidence of motor dysfunction or discoordination," and although there was a "very weak" argument for mild peripheral neuropathy, "it does not impair her functional status." (*Id.*)  Dr. Welch believed that plaintiff's pain was mechanical, and it would be better treated with anti-inflammatory medication rather than with opioids. (*Id.*)  Based on his physical findings, Dr. Welch completed an RFC evaluation, concluding that plaintiff could perform light work, with the additional limitations that plaintiff should never climb ladders or scaffolds, and she should not twist.[10] (T. 393-98).

An MRI in July of 2007 confirmed that plaintiff had a "moderate sized central disc herniation at L5-S1, with mild canal stenosis and mild posterior displacement of the S1 nerve root. (T. 207).  On November 29, 2007, treating physician Dr. James Hicks found that plaintiff was clearly frustrated with the physicians' inability to get her pain controlled. (T. 218).  However, Dr. Hicks found that plaintiff's gait was normal, her strength was normal, her deep tendon reflexes were equal. (*Id.*)  Although plaintiff was tender at the S1 location, she had no spasm. (*Id.*)  On December 18,

---

[10] The ALJ specifically stated that he gave "no" weight to the RFC determination of the "non-examining, nonmedical source," but noted that the conclusions were "generally consistent" with those of Dr. Welch. (T. 14, 223-28).  The nonmedical source also found that plaintiff could perform "light work activities." (T. 224-25).

12

2007, Dr. Hicks found that there was no palpable spasm in plaintiff's back, her straight leg raising (SLR) was negative, deep tendon reflexes (DTRs) were negative, and flexion and extension were within normal limits. (T. 217). He stated that extension was limited to **10-15 degrees**. (T. 216). There was no palpable spasm in plaintiff's back.[11] (T. 217). He also stated that plaintiff was "pushing hard for disability." (*Id.*)

On January 8, 2008, Dr. Hicks stated that "I honestly can't find much objective abnormality in exam <u>or</u> *in function*." (T. 216) (underlining in original; emphasis added). On July 21, 2009, Dr. Hicks found that although plaintiff contined with "'severe'" incapacitating pain, she "still feels able to do more [with] her kids, around [the] house." (T. 377). The examination of plaintiff's back showed no evident atrophy or spasm, straight leg raising was negative, and deep tendon reflexes were equal and within normal limits. (*Id.*) Dr. Hicks's physical findings are completely consistent with the findings of Dr. Welch, and thus, Dr. Welch's assessment of plaintiff's RFC is supported by his own examination as well as the records of plaintiff's treating physician and other health care professionals who have examined plaintiff.[12]

---

[11] Although the ALJ wrote in his decision that Dr. Hicks's December 18, 2007 report stated that plaintiff had "palpable spasms" in her back, a review of the actual report shows that Dr. Hicks's notation indicates that plaintiff's back was "without" palpable spasms. (T. 217).

[12] Several of plaintiff's earlier medical reports were authored by a Physician's Assistant, William Sanders and by a Nurse Practitioner, Donna Finn-Kuo. (T. 195, 197, 198, 200, 202, 205). Physicians' Assistants are listed as "other sources" for purposes of the Social Security Act. 20 C.F.R. § 404.1513(a) & (d)(1). These sources may be used to show the severity of an impairment or the

The ALJ cited the opinion of plaintiff's treating neurologist, Dr. Yu-Hung Kuo, who on February 4, 2008, found that plaintiff was "completely intact" and had "no abnormalities during strength, reflex, or range of motion testing, notwithstanding her herniated disc. (T. 14, 220-221). Dr. Kuo stated that he recommended surgery, but warned plaintiff that the surgery might not alleviate her pain, and that she had no neurological deficits.[13] (T. 221-22). After plaintiff's surgery, she continued to see Dr. Hicks, who on November 5, 2008 stated that plaintiff bent over at the waist when she walked, but Dr. Hicks was "unable to reproduce pain." (T. 334). There was no muscle spasm, straight leg raising was negative, there was no sensory loss, and deep tendon reflexes were normal.[14] (T. 334). On December 2, 2008, Dr. Hicks stated that plaintiff continued to "walk stooped and cocked to the left," but had no muscle spasm. (T. 333).

Although the ALJ recognized that plaintiff had a severe impairment, had a

---

effect upon a plaintiff's ability to work, but may not be used to establish an impairment. *Id.* In any event, these reports are consistent with the reports of Dr. Hicks and Dr. Welch. There are reports signed by other physicians, Dr. Schwerman (T. 190, 193, 204, 345); and Dr. Nancy Carney (T.201, 339). All these individuals are associated with the Hudson Headwaters Health Network, but all do not work at the same facility.

[13] On January 4, 2008, another neurosurgeon, Dr. Joseph H. Arguelles, stated that he was "very hesitant to recommend [a diskectomy]." (T. 211). He stated that if her pain were radicular, she might have a likelihood of experiencing relief with the procedure, however, he believed that plaintiff's problem was more "general back pain." (*Id.*) He recommended getting a second opinion. (*Id.*)

[14] Dr. Hicks expressed concern about plaintiff's potential addiction to pain medications both before and after surgery. (T. 334, 336, 337, 338).

herniated disc with failed disc surgery, and suffered from a degree of pain, he found that plaintiff's allegations of pain were not credible to the extent that her allegations would prevent the performance of light work. (T. 13). In analyzing plaintiff's credibility, the ALJ noted some inconsistencies between her testimony and the forms she completed for her disability applications. (T. 13). The ALJ noted that although plaintiff claimed an onset date of December 2006 in her papers, at the hearing she testified that she was fired from her waitress job in December of 2006 because "new owners had taken over the restaurant." (T. 22, 125). He stated that in 2007, plaintiff left her Certified Nurse's Assistant ("CNA") training because she had babysitting problems, but at the hearing, she testified that she quit the course because it became too difficult.[15] (T. 13, 125). The ALJ stated that the plaintiff's speculation that it would have been impossible to find employment as a CNA because of her impairment was not "persuasive," given that she spent two months in training and stated that she quit because of the babysitting problem. (T. 13). As stated above, credibility is for the ALJ to determine, and as long as his determination is supported by substantial evidence, this court may not substitute its own judgment. The inconsistencies in

---

[15] The court notes that the babysitting problem was listed first on the report to which the ALJ is referring. (T. 125). The report also states that plaintiff sat in the CNA class from 4/23/2007 until 6/8/2007, and she did not finish the certification class because her babysitter quit. However, plaintiff also stated that "with my physical limitations, it was impossible for me to find any work or do the CNA job even if I got certified." (*Id.*) This report is typed and was completed based upon an interview with plaintiff by "D. Haywood." (T. 123).

plaintiff's statements do exist, and the ALJ has cited the record correctly, thus, the court cannot reject the ALJ's credibility finding.

Plaintiff now alleges that there was a mistake in the papers, and she is not claiming to be disabled until July of 2007, so that whatever activities she did prior to July of 2007 are irrelevant to the disability determination.[16]  The court notes that there was some confusion regarding dates at the hearing. (T. 22-23).  However, plaintiff testified that in July of 2007, she "just woke up one morning and felt - - I was like hunched over and I was just in a lot of pain . . . ." (T. 22).

Although "in some function report," it was reported that plaintiff cared for her children, cooked, cleaned, and played with her children, (Dkt. No. 16-1), plaintiff now claims that she never did those things, and the children dressed themselves. (*Id.*)  The function report to which plaintiff is referring is dated January 6, 2008, appears to be written in her handwriting, and is signed by plaintiff. (T. 133-41).  In that function report, plaintiff states that, among other things, she helped bathe and dress the children. (T. 133).  Her younger child would have been two years old at the time,[17] and it is difficult to believe that plaintiff just "watched" her get dressed.  The function

---

[16] In July of 2007, plaintiff left her CNA training, either due to a babysitting problem, or because the job would have been "too difficult."  Plaintiff is arguing that she is not claiming disability until July 2007, so that the ALJ should not have considered her activities prior to that time in determining that plaintiff was not disabled.

[17] Plaintiff testified at the hearing in September of 2009 that one of her children was six years old, but the other was three years old. (T. 21).

16

report also states that plaintiff cooked six times per day. (T. 134). The report also states that plaintiff was able to clean, do dishes, vacuum, mop, sweep, and pick up toys, although all those functions were "difficult." (T. 134). Plaintiff now claims that those facts were "unreal," however, the ALJ would not have known that at the time.[18]

Although plaintiff states that she wants what she "deserved," the court notes that disability requires more than the ability to work without pain. *Montaque v. Astrue*, No. 07-CV-749, 2010 WL 1186515, at *11 (N.D.N.Y. March 23, 2010) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). When the ALJ made his RFC determination, he also considered any additional limitations that plaintiff might have, including the inability to "twist," crawl, and climb ladders or scaffolds. (T. 16). The ALJ found that notwithstanding these additional limitations, the light job base would not be "significantly restricted," and that according to Social Security Rulings 83-14 and 83-15, the ability to twist is not "a nonexertional demand on which the claimant's ability to perform work within an occupational base is evaluated." (T. 16). Thus, the ALJ properly considered all plaintiff's limitations in determining that she was capable of performing light work and was not disabled within the meaning of the statute,

---

[18] The ALJ focused upon a different report, which showed the inconsistency in plaintiff's allegations about when her disability began. (T. 13, 124-31). As stated above in footnote 15, the report to which the ALJ refers is a report of a telephone interview with plaintiff by D. Haywood. (T. 124-31). Plaintiff also states in her current email that in March of 2010, she turned over custody of the children to their father because the care was "too much" for her to handle. (Dkt. No. 16-1 at 1). The court notes that the ALJ's decision was dated March 11, 2010, and thus, the ALJ would not have been aware of this alleged change in circumstances.

notwithstanding a certain degree of pain. The ALJ's decision is supported by substantial evidence in the record and may be affirmed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 12, 2012

*Andrew T. Baxter*
Hon. Andrew T. Baxter
U.S. Magistrate Judge